```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT BLUEFIELD
```

**HENRY (NMN) MARTIN, JR.,**

    **Plaintiff,**

v.                                        CIVIL ACTION NO. 1:04-1169

**NORFOLK SOUTHERN RAILWAY COMPANY**
**a/k/a NORFOLK SOUTHERN CORPORATION,**

    **Defendant/Third-Party Plaintiff,**

v.

**SECOND STERLING CORPORATION, BLUESTONE**
**COAL CORPORATION, and KEYSTONE SERVICE**
**INDUSTRIES,**

    **Third-Party Defendants.**

### MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT

Pending before the court are the motions for summary judgment of the third-party plaintiff, Norfolk Southern Railway Company a/k/a Norfolk Southern Corporation ("Norfolk Southern") (Doc. No. 40) and the third-party defendants, Second Sterling Corporation ("Second Sterling"), Bluestone Coal Corporation ("Bluestone"), and Keystone Service Industries ("KSI") (Doc. No. 22). For the reasons that follow, the court **DENIES** Norfolk Southern's motion and **GRANTS** summary judgment in favor of the third-party defendants.

### I. Introduction

This action arises from a personal injury suit filed by the plaintiff, Henry Martin, in the Circuit Court of McDowell County, West Virginia, on September 30, 2004. Norfolk Southern was the sole

defendant named in the McDowell County suit, which alleges that an employee of Norfolk Southern negligently released a railroad car onto the track where Martin, an employee of KSI, was "loading and dropping railroad cars."  (Doc. No. 1, Ex. A, ¶¶ I, II.)  This underlying complaint further alleges that the railroad car released by a Norfolk Southern employee struck the cars on which Martin was working, causing him to fall onto the track and injure himself.  (Id. ¶ II.)

    Norfolk Southern removed the McDowell County suit to this court on October 29, 2004, and subsequently filed a third-party complaint against Second Sterling, Bluestone, and KSI, three entities engaged in activities related to coal mining at the location of Martin's alleged injury.  (Doc. Nos. 1, 11.)  Norfolk Southern's third-party action seeks both express and implied indemnity from the three third-party defendants, with the claim for express indemnity predicated on a Siding Lease Agreement ("the agreement") entered into between Norfolk Southern's predecessor-in-interest, Norfolk & Western Railway Company, and Second Sterling in 1993.  Although Bluestone and KSI were not parties to the agreement, Norfolk Southern asserts that they were engaged in a joint venture with Second Sterling to operate on the property covered under the agreement and should bear equal responsibilities for indemnity.  (Doc. No. 11 at 4.)

## II.  Analysis

    Turning to the issue of summary judgment, Rule 56 of the Federal Rules of Civil Procedure provides that

>    [t]he judgment sought shall be rendered forthwith
>    if the pleadings, depositions, answers to

> interrogatories, and admissions on file, together
> with the affidavits, if any, show that there is
> no genuine issue as to any material fact and that
> the moving party is entitled to a judgment as a
> matter of law.

Fed. R. Civ. P. 56 (2003). The moving party has the burden of establishing that there is no genuine issue as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). As the United States Supreme Court of Appeals stated in Celotex, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. Furthermore, "[c]ontract interpretation is a subject particularly suited for summary judgment disposal." Bank of Montreal v. Signet Bank, 193 F.3d 818, 835 (4th Cir. 1999).

Once the moving party has met this burden, the burden then shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in
> support of the plaintiff's position will be
> insufficient; there must be evidence on which the
> jury could reasonably find for the plaintiff.
> The judge's inquiry, therefore, unavoidably asks
> whether reasonable jurors could find, by a
> preponderance of the evidence, that the plaintiff
> is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 250-251. Significantly, "a

3

party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### A. Express Indemnity

Although one argument made by the third-party defendants in response to Norfolk Southern's express indemnity claim involves the validity of the Siding Lease Agreement under West Virginia Code § 55-8-14, which governs the availability of indemnification agreements in the context of certain construction and building projects, the dispute over the third-parties' alleged indemnity obligation may be disposed of simply on the basis of the agreement's plain language. As Norfolk Southern correctly notes, express indemnity agreements are governed by contract principles. Valloric v. Dravo Corp., 357 S.E.2d 207, Syl. Pt. 1 (W. Va. 1987). As such, "[i]n construing the language of an express indemnity contract, the ordinary rules of contract construction apply." Vankirk v. Green Const. Co., 466 S.E.2d 782, Syl. Pt. 4 (W. Va. 1995). As with other types of contracts, full effect must be given to the plain meaning of an express indemnity contract's terms. Nisbet v. Watson, 251 S.E.2d 774, 780 (W. Va. 1979).

The first provision of the agreement relied upon by Norfolk Southern states as follows:

> [Second Sterling] shall be solely responsible for and shall indemnify, protect and hold [Norfolk Southern] harmless from all claims, demands, suits, judgments, liabilities, costs (including attorneys' fees) and expenses occasioned by any death, personal injury, or loss of or damage to property arising out of or in any manner incidental to the loading into or unloading from rail cars, or the handling, storage or transmission in connection with such loading or unloading, of hazardous or flammable materials (as defined in the regulations of the United States Department of Transportation), whether or not negligence on the part of the [Norfolk Southern] may have caused or contributed to such death, injury, loss or damage.

(Doc. No. 41, Ex. A, Siding Lease Agreement ¶ 6(b).)

Norfolk Southern interprets this provision as requiring indemnity for injury arising from the loading or unloading of any materials from rail cars, regardless of the nature of the materials. Indeed, in citing the above provision in its memorandum in support of its motion for summary judgment, Norfolk Southern omits the language following the phrase "incidental to the loading into or unloading from rail cars." (See Doc. No. 41 at 7.) This language is absolutely necessary to a correct interpretation of the liability provision, however, as it makes perfectly evident that this provision requires indemnity only where injury arises from the loading or unloading from rail cars of *hazardous or flammable materials*. There has been no allegation – and, indeed, there appears to be no dispute between the parties on this point – that hazardous or flammable materials were involved in any way in this incident.

The second provision on which Norfolk Southern relies with regard to its express indemnity claim is Section 6(g) of the agreement, dealing with movement of rail cars on the track by Second Sterling.  It states that "[i]n the event that this Agreement authorizes [Second Sterling] to or [Second Sterling] does move any rail cars on the Track," Second Sterling shall be obligated to indemnify Norfolk Southern with regard to any injury "arising or growing out of the movement of rail cars *by [Second Sterling] or its agents* . . . ."  This provision provides no basis for Norfolk Southern's demand of indemnity, however, because there is no allegation that Second Sterling moved any rail car in relation to this incident.  Although the provision requires indemnity even where negligence on the part of Norfolk Southern contributes to the injury that is the subject of the litigation, it certainly cannot be read to require indemnity where the movement of a rail car by Norfolk Southern, alone, has caused injury.

Norfolk Southern's express indemnity claim must necessarily fail with regard to Second Sterling based simply on the plain language of the Siding Lease Agreement upon which it relies.  Because the contract's plain terms provide no basis for liability on the part of Second Sterling, the court need not address the joint venture theory through which Norfolk Southern claims a right to indemnity with regard to Bluestone and KSI.

6

**B.     Implied Indemnity**

The court is likewise compelled to grant summary judgment in favor of the third-party defendants with regard to Norfolk Southern's claim for implied indemnity.  In <u>Harvest Capital v. West Virginia Dept. Of Energy</u>, 560 S.E.2d 509 (W. Va. 2002), the Supreme Court of Appeals of West Virginia explained that, "[i]mplied indemnity is based upon principles of equity and restitution and one must be without fault to obtain implied indemnity."  <u>Id.</u> at Syl. Pt. 3.  The Court stated the necessary elements of an implied indemnity claim in West Virginia to be "(1) an injury . . . sustained by a third party; (2) for which a putative indemnity has become subject to liability because of a positive duty created by statute or common law, but whose independent actions did not contribute to the injury; and (3) for which a putative indemnitor should bear fault for causing because of the relationship the indemnitor and indemnitee share."  <u>Id.</u> at Syl. Pt. 4.

Neither in the underlying personal injury suit, nor in the instant action, has any allegation been made that the third-party defendants caused or contributed in any way to the injuries for which Martin, the plaintiff in the underlying action, seeks compensation.  Allegations of fault for Martin's injuries have been made solely against Norfolk Southern, and with no genuine issue of material fact present to defeat summary judgment, Norfolk Southern's claim for implied indemnity must accordingly fail.

## III. CONCLUSION

Because the plain language of the Siding Lease Agreement relied upon by Norfolk Southern is inapplicable to the allegations in this and the underlying litigation, Norfolk Southern's claim of express indemnity must fail with regard to all three of the third-party defendants. Additionally, because no allegations of fault have been made as to any party other than Norfolk Southern, the third-party plaintiff is not entitled to indemnity under an implied indemnity theory. No genuine issues of material fact are present as to either indemnity claim, and the motion for summary judgment of the third-party defendants is therefore granted. A separate judgment order will be entered contemporaneously with this opinion implementing the court's decision.

It is **SO ORDERED** this 30th day of March, 2006.

ENTER:

David A. Faber
Chief Judge